UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JESSE L. WRIGHT, III,

                          Plaintiff,

     v.                                                      **DECISION AND ORDER**
                                                                         14-CV-326S

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

      1.      Plaintiff Jesse L. Wright, III, challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff received Supplemental Security Income benefits based on disabilities as a child. When Plaintiff turned 18, these disability benefits were reviewed and Plaintiff was found to be no longer disabled as of August 1, 2007. Plaintiff alleges that he has been disabled since August 1, 2007, due to borderline intellectual functioning, explosive disorder, and a learning disability.

      2.      The Commissioner of Social Security ("Commissioner") denied Plaintiff's application for disability benefits on August 13, 2007, after which Plaintiff requested an administrative hearing. Plaintiff received that hearing before ALJ William E. Straub on August 5, 2010. The ALJ considered the case *de novo*, and on August 12, 2010, issued a decision denying Plaintiff's application. Plaintiff filed a request for review with the Appeals Council, but the Council could not find Plaintiff's file and remanded the matter for a new hearing. The second hearing was held on March 7, 2013 and the ALJ again denied Plaintiff's application. Plaintiff filed a request for review with the Appeals Council, which was denied on April 23, 2014. Plaintiff filed the current civil action on April 29, 2014,

1

challenging Defendant's final decision.[1]

3.   On February 23, 2015, Plaintiff filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 10). The Commissioner followed suit with her own motion on April 24, 2015. (Docket No. 12). For the following reasons, the Commissioner's motion is granted and Plaintiff's motion is denied.

4.   A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.   "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the

---

[1] The ALJ's March 7, 2013 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. The five-step process generally utilized is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520. However, the step one

determination of whether a claimant has engaged in substantial gainful activity is not considered when redetermining disability at age 18, as is the case here. See 20 C.F.R. 416.987(b);

8. The claimant has the burden of proof as to the first four steps, but the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C.§ 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings: (1) Plaintiff's borderline intellectual functioning, explosive disorder, and learning disability are "severe" impairments (R. at 13);[2] (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (R. at 13); (4) Plaintiff retains the residual functional capacity (RFC) to perform the full range of work at all exertional levels, subject to certain nonexertional limitations including performing only simple tasks in a low stress environment (R. at 14); and (5) given Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform (R. at 17). Ultimately,

---

[2]Citations to the underlying administrative record are designated "R."

the ALJ concluded that Plaintiff's continuing eligibility for supplemental security income upon attaining age 18 ended on August 1, 2007, and Plaintiff had not become disabled again since that date. (R. at 18).

10. Plaintiff raises two challenges to the ALJ's decision: First, Plaintiff argues that ALJ Straub erred by improperly substituting his own judgment for that of competent medical evidence by refusing to accept the IQ test performed by Dr. Hamilton. Second, Plaintiff contends that the ALJ improperly determined Plaintiff's credibility. Each argument will be discussed in turn.

11. With respect to Plaintiff's first contention, Plaintiff claims that the ALJ erred in failing to find that, due to Plaintiff's IQ score, Plaintiff was *per se* disabled as "mentally retarded" under the relevant regulations. To find a claimant *per se* disabled, the ALJ must employ a two-part test. First, the claimant must demonstrate "significant subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *ie*., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1 Part A, § 12.05. Second, if this first element is met, a claimant must establish that his limitations meet one of four sets of criteria listed in subsections A through D of § 12.05. § 12.05C specifically requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1 Part A, § 12.05C.

Here, Plaintiff argues that the ALJ erred in discounting Dr. Hamilton's finding that Plaintiff's IQ was 52 in favor of a finding by consultative examiner Dr. Baskin, who determined Plaintiff's IQ score to be above 70. (R. at 17). On July 17, 2007, Dr. Baskin

5

performed psychiatric and intelligence evaluations on Plaintiff. (R. at 15, 563, 565). Dr. Baskin reported that Plaintiff obtained a Verbal Scale IQ of 76, Performance Scale IQ of 72, and Full Scale IQ of 72, which placed Plaintiff in the borderline range of intellectual functioning. (R. at 16, 566). Dr. Baskin found that any cognitive problems, such as problem solving skills, should not preclude Plaintiff's ability to function in a workplace. (R. 566.) This IQ score also placed Plaintiff above the range of 60 to 70, which is needed to be considered "mentally retard[ed]" under § 12.05C.

Two years after Dr. Baskin's tests, in February 2009, Dr. Hamilton conducted similar psychiatric and intelligence testing on Plaintiff. (R. at 16, 501-04). Dr. Hamilton reported that Plaintiff obtained a Full Scale IQ of 52, which indicated a low range of intellectual abilities. (R. at 16, 473). Although Dr. Hamilton similarly reported that Plaintiff "seemed motivated to do well," as the ALJ highlighted, she also noted that "he had little patience," evidence by his failure to wait while the evaluator demonstrated tasks, and when test items became difficult, "he appeared angry and frustrated." (R. 16, 502.) The ALJ's reasoning for giving more weight to the earlier consultative examiner's test results – that Dr. Hamilton's "assessment underestimates the claimant's actual abilities" – is therefore both clear from the decision and supported by the record.

Further, in response to Plaintiff's assertion that Dr. Hamilton's assessment should qualify him as *per se* disabled, the ALJ also noted this doctor's findings contradicted additional evidence in the record, including a school psychologist report classifying Plaintiff as only learning disabled and finding that Plaintiff was maturing and becoming "better engaged with the demands of the academic setting." (R. at 15, 587). Therefore, the ALJ properly found that Plaintiff did not meet the § 12.05C "mentally retard[ed]" guidelines.

12. Second, Plaintiff contends that the ALJ made an improper determination

regarding Plaintiff's credibility. Plaintiff claims that the ALJ improperly characterized the evidence and should afford his testimony more weight.

Credibility determinations are generally reserved to the Commissioner, not the reviewing court. Aponte v. Sec'y of Health and Human Svcs., 728 F.2d 588, 591 (2d Cir. 1984) (holding that it is the job of the Commissioner and not the reviewing court to make determinations on the credibility of witnesses); Carrol v. Sec'y of Health and Human Svcs., 705 F.2d 638, 642 (2d Cir. 1982). "In determining the credibility of the individual's statements, the [Commissioner] must consider the entire case record, including objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists . . . and any other relevant evidence in the case record." SSR 96-7P, 1996 WL 374186, *1 (July 2, 1996). This court also "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. Yellow Freight Sys. Inc. v. Reich, 38 F.3d 76, 81 (2d Cir.1994).

The ALJ notes in his decision that Plaintiff is only partially credible because there are several inconsistencies between his testimony at the hearing and other evidence in the record. First, at the hearing, Plaintiff "mumbled and was very vague in answering questions unless prompted by his representative." (R. at 16). However, other evidence demonstrates that Plaintiff's speech was clear, fluent, and that he demonstrated adequate receptive language skills. (R. at 16; see 482, 565A). Second, Plaintiff testified that he did not graduate from high school, yet the record, including his own prior testimony, clearly reflects that he completed high school and received a diploma. (R. at 16, 66, 80). This Court notes that, although the diploma reflected Plaintiff participated in a special education program, Plaintiff's unqualified assertion that "he "did not graduate high school" is

7

borderline frivolous. (Pl's Mem of Law at 18.) Third, Plaintiff also misrepresented his assistance in household chores. At the hearing, Plaintiff testified that he only cleaned his room, yet other evidence, including as noted by the ALJ a self-report of his activities, indicates that Plaintiff shared household chores with his grandmother. (R. at 16-17, 32, 416). Finally, Plaintiff testified that he always stayed in the house and had no hobbies, yet other evidence indicates that he played basketball, hung out with friends, and watched TV. (R. at 17, 33, 417, 564). In light of these cited inconsistencies, and giving deference to the ALJ's ability to observe Plaintiff's demeanor while on the witness stand, the Court finds no reason to disturb the ALJ's credibility determination. Accordingly, Plaintiff's second argument is rejected.

13. Having considered Plaintiff's challenges, this Court is satisfied that the ALJ committed no reversible error, and that his decision is based on substantial evidence. It will therefore grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same relief.

****

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED.

Dated: August 24, 2015
      Buffalo, New York

                                    /s/William M. Skretny
                                    WILLIAM M. SKRETNY
                                    United States District Judge